UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN FRANCISCO VEGA,

     Plaintiff,

v.                             Case No.:  2:23-cv-202-SPC-KCD

JON P. CARNER, DAKOTA
CARDENAS, JOHN DOE and
JANE DOE,

     Defendants.

                                  /

## OPINION AND ORDER

Before the Court are Defendants Jon Carner and Dakota Cardenas's Motion for Summary Judgment (Doc. 54), Plaintiff Juan Francisco Vega's Motion for Summary Judgment (Doc. 58), and the parties' responses and replies.

## Background

Vega is an involuntarily committed resident of the Florida Civil Commitment Center (FCCC), a facility that houses and treats men committed as sexually violent predators after their terms of incarceration. *See Pesci v. Budz*, 730 F.3d 1291, 1299 (11th Cir. 2013). He sues Carner and Cardenas under 42 U.S.C. § 1983 for deliberate indifference to his conditions of confinement and serious medical need. During the relevant time, Carner

worked as security director and assistant facility administrator, and Cardenas was a lieutenant and a captain.  The following facts are unrefuted unless otherwise noted.[1]

In early 2021, the DeSoto County Sheriff's Office began investigating allegations that Vega defrauded other FCCC residents.  The Sheriff's Office referred the matter to the State Attorney's Office on August 11, 2021.  In accordance with FCCC policy, Vega was housed in the special management unit while the investigation was pending.  Residents housed in the special management unit are separated from the FCCC's general population but can socialize with other residents in the common areas and have access to daily fresh air, computer time, recreation, religious services, and off-unit treatment groups.

On September 8, 2021, Vega had the battery replaced in his pacemaker at Fawcett Hospital.  Vega returned to the FCCC later that day and was placed in the infirmary for monitoring.  The next day, Vega was released from the infirmary and was to be placed in quarantine housing in accordance with the FCCC's COVID-19 protocol.  Cardenas escorted Vega to the special management unit for quarantine at about 11:30 a.m.

---

[1] Denials unsupported by pinpoint citations are not enough to refute a fact supported by record evidence.  (*See* Doc. 30 at 3) ("Each denial must set forth a **pinpoint** citation to the record where the fact is disputed…**any fact that the opposing counsel or party does not specifically controvert…may also be deemed undisputed if supported by record evidence.**).

The parties' stories diverge here.   Vega testifies he declared a homicide/suicide psychological emergency, Cardenas put him in an observation cell, and Vega yanked the stitches out and told Cardenas he could have them. Vega argues Cardenas should have called a "Code Blue" medical emergency but claims Cardenas instead walked away and notified Carner of the incident. Cardenas testifies Vega threatened to pull the stitches out of his incision site while being escorted to the quarantine unit.  As a result, Cardenas placed Vega in an observation room where staff could check on him during rounds every thirty minutes.  Vega was agitated and showed Cardenas his back side, but he did not rip out his stitches.  Cardenas then returned to his position outside the dorm.

At around 4:00 p.m. on September 9, 2021, Vega told Captain Jarrod Newsome he was beginning a hunger strike.  Newsome wrote an incident report about the hunger strike—the report does not mention that Vega was bleeding or otherwise appeared to be in medical distress   Officer Jessie Halliburton conducted rounds every thirty minutes that day from 10:45 p.m. to 7:15 a.m the next morning.  The light in Vega's observation room remained on, so Halliburton was able to see Vega during his rounds.  Halliburton did not observe any issues with Vega until 3:50 a.m, when he saw what appeared to be blood.  Halliburton entered the room to get a closer look, and he confirmed that Vega had blood on his body.  Halliburton immediately called the shift

3

supervisor and health service staff via radio.   Nurse Lamar arrived and examined Vega, and Vega was transferred to  the hospital a short time later.

In her notes, Lamar observed there was no pressure dressing on the site of Vega's incision, and the sutures had been removed.  Vega was placed on a stretcher, and EMS took Vega to Fawcett Hospital.  According to treatment notes from the hospital, Vega told staff that while asleep he "rolled over and opened up the suture site." (Doc. 54-14 at 5-6).  Vega was stable, there was no further bleeding, and he was scheduled to have the site repaired.  While at Fawcett, Vega received treatment for an infection and pneumonia, resulting in removal of the pacemaker.  Due to a lack of equipment at Fawcett Hospital, Vega was transferred to Bayfront Hospital on September 15, 2021, to receive a new pacemaker.

On September 16, 2021, outside cariologist Dr. Peykar implanted a leadless pacemaker without complications.  Carner did not allow Vega's wife to visit him in the hospital because FCCC rules disallow such visits unless a medical professional considers the patient to be at the end stage of life.  Vega was discharged from the hospital and returned to the FCCC infirmary for monitoring.

On November 2, 2021, Vega reported he was on a hunger strike because he was still in confinement, and he said he had no problem being hospitalized. Medical staff monitored Vega, and he ended his hunger strike on November 9,

2021. FCCC staff routinely followed up with the State Attorney's Office for status updates on its decision whether to file charges against Vega. In December 2021, the State Attorney's Office notified the FCCC they would not pursue criminal charges against Vega, so he was released from special management and returned to general population.

Vega went on another hunger strike from June 15, 2022, through roughly June 21, 2022, and he was monitored by medical staff. During the hunger strike, Vega was served two behavior management reports (BMRs). Captain LaShay King wrote the first BMR on June 17, 2022, accusing Vega of inciting other residents to protest and resist FCCC rules. Vega denied the allegation at the BMR hearing, but the panel found it substantiated. FCCC Inspector Mark Snyder wrote the second BMR on June 20, 2022. It alleged that on June 16, 2022, Vega wrote a letter to a former FCCC staff member discussing an ongoing conspiracy to sell illegal drugs to other FCCC residents. At the BMR hearing, Vega acknowledged writing the letter but denied selling drugs. He acknowledged other residents owed him money, but said it was for helping them fill out paperwork. The panel found the BMR substantiated.

Vega sued Carner and Cardenas for violating his Eighth and Fourteenth Amendment rights by housing him in the secure management unit "indefinitely" and acting with deliberate indifference to his serious medical needs.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520,

524 (1994).  When parties file cross-motions for summary judgment, the Court

views "the facts in the light most favorable to the non-moving party on each

motion."  *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 115

F.4th 1266, 1287 (11th Cir. 2024).

Vega's claims arise under 42 U.S.C. § 1983.  To succeed on a § 1983 claim,

a plaintiff must show that (1) the defendant deprived him of a right secured

under the Constitution or federal law, and (2) the deprivation occurred under

color of state law.  *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011)

(citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)).   In

addition, a plaintiff must establish an affirmative causal connection between

the defendant's conduct and the constitutional deprivation.  *Marsh v. Butler*

*Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

Vega's summary judgment briefing clarifies the nature of his claims.

First, Vega asserts a conditions-of-confinement claim against Carner for

placing him in the special management unit "indefinitely"—that is, for the

length of an investigation that did not have a scheduled end date.  Second,

Vega asserts a deliberate-indifference-to-serious-medical-need claim against

Cardenas, alleging he did not contact mental health and medical staff after

Vega ripped out his stitches and offered them to Cardenas.  Because Vega is

civilly committed, his claims are governed by the Fourteenth Amendment

rather than the Eighth Amendment.  But "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments, and it makes no difference whether [the plaintiff] was a…detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving…detainees." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (cleaned up).

In his response to the defendants' motion for summary judgment, Vega challenges the constitutionality of the FCCC policy requiring residents under investigation to remain on wing restriction.  Vega did not raise that claim in his complaint, and "a party may not raise a new theory for the first time in response to a summary judgment motion." *Dantzler, Inc. v. PNC Bank, Nat. Ass'n*, 946 F. Supp. 2d 1344, 1361 (S.D. Fla. 2013); *see also GeorgiaCarry.Org,Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings.").  The Court thus will not address the general constitutionality of the FCCC policy. Rather, the Court will consider whether application of the policy to Vega created unconstitutional conditions of confinement.

**A. Conditions of confinement**

Courts apply a two-part analysis to challenges to conditions of confinement.   A plaintiff must establish an objective component and a subjective component.   "Under the objective component, the detainee must prove that the conditions are sufficiently serious to violate the Eighth Amendment: that is, he must show that 'extreme' conditions created an unreasonable risk—one that society chooses not to tolerate—of serious damages to the detainee's future health or safety." *Ellis v. Pierce Cty., Ga.,* 415 F. App'x 215, 217 (11th Cir. 2011) (cleaned up).

Under the subjective component, the detainee must show deliberate indifference, which has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas,* 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotations and citation omitted).   The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Saunders v. Sheriff of Brevard Cty.,* 735 F. App'x 559, 564 (11th Cir. 2018) (internal quotation and citation omitted).

Vega claims Carner violated his rights by confining him in the special management unit "indefinitely" while the DeSoto Sheriff's Office and the State Attorney's Office investigated claims that Vega attempted to defraud other

9

FCCC residents.  Vega primarily takes issue with the alleged "indefinite" nature of the confinement.  He does not identify any particular conditions of his confinement in the special management unit that created a risk to his health or safety.  Vega thus fails to establish the objective component of a conditions-of-confinement claim.

Vega also fails to prove the subjective component.  He submits no evidence that Carner believed confinement in the special management unit created a risk of serious harm to Vega or that Carner disregarded such a risk. There are no material factual disputes here.  Carner is entitled to summary judgment on this claim based on the unrefuted facts.

**B. Serious medical need**

"To establish a § 1983 claim for deliberate indifference, a plaintiff must show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifferent, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). Even if a defendant actually knew of a substantial risk to a detainee's health or safety, he cannot be found liable for deliberate indifference "if he 'responded reasonably to that risk.'" *Id.* (quoting *Farmer, 511 U.S. 825, 844-45 (1994)*).

The parties dispute a key fact relating to this claim—whether Vega removed his stitches in front of Cardenas. When viewing the facts in Cardenas's favor, Cardenas acted reasonably when he left Vega in the observation room because there was no apparent need for immediate medical or mental health care. Summary Judgment is warranted.

In evaluating Cardenas's motion for summary judgment, the Court credit's Vega's version of the facts. Vega's relevant affidavit testimony picks up around 11:30 a.m. on September 9, 2021, just after Cardenas told him he would be in Covid-19 quarantine for fourteen days:

> 16. I then declared a homicide / suicide psychological emergency and Dakota Cardenas told me, "Okay" and placed me in strip cell 1084 at the Lakes Behavior Management Unit so I yanked out the stitches from the heart surgery and told Dakota Cardenas that he could have them.

11

> 17. Dakota Cardenas, instead of calling a "Code Blue" medical emergency, as required by Wellpath's (2021) Resident Handbook – when blood is spilled; he contacted Jon P. Carner and told him that I yanked out the stitches from the heart surgery.

(Doc. 58-9 at 5).  It is unrefuted that Vega remained in the observation room, where FCCC staff checked on him every 30 minutes until Halliburton noticed blood on Vega at around 3:50 the next morning.  Vega acknowledges that his wound did not open until he rolled over on his stomach while sleeping.  (Doc. 70 at 5).  According to the medical records from Fawcett Hospital, that is also what Vega told hospital staff.  Based on these facts, the Court finds that Cardenas acted reasonably by notifying Carner of the incident and placing Vega in an observation room where he would be monitored by FCCC staff. When Vega's wound opened and he began bleeding, he received prompt medical treatment.  Because Cardenas acted reasonably, he is entitled to summary judgment.

Accordingly, it is now

**ORDERED:**

1. Defendants Jon Carner and Dakota Cardenas's Motion for Summary Judgment (Doc. 54) is **GRANTED** and Plaintiff Juan Francisco Vega's Motion for Summary Judgment (Doc. 58) is **DENIED**.

2. The Clerk is **DIRECTED** to terminate any pending motions and

deadlines, enter judgment for Defendants, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 12, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

13